**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
--------------------------------------------------------------x
LER MANAGEMENT LLC

                     Plaintiff,

    - against -

DANIEL HUFF

                    Defendant.
--------------------------------------------------------------x

INDEX NO:

Date Filed: December ___, 2025
PLAINTIFF DESIGNATES
NEW YORK COUNTY AS THE
PLACE OF TRIAL.

**SUMMONS**

THE BASIS OF VENUE:
CPLR 503(a) (none of the parties
resides in the State of New York;
Plaintiff designates New York
County)

**TO THE ABOVE NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to

serve a copy of your answer or if the Complaint is not served with this Summons, to serve a

notice of appearance, upon the plaintiff's attorney within twenty (20) days after service of this

Summons, exclusive of the date of service (or within thirty [30] days after the service is

complete if this Summons is not personally delivered to you within the State of New York);

and in case of your failure to appear or answer, judgment will be taken against you by default

for relief demanded in the complaint.

Dated: December 14, 2025
       Great Neck, New York

_____
Gary Rosen, Esq.
ROSEN LAW LLC
Attorneys for Plaintiff
Rosen Law LLC
216 Lakeville Road
Great Neck, New York 11020
516-437-3400

Case 1:26-cv-01031 Document 1-1 Filed 02/06/26 Page 2 of 35

**<u>DEFENDANT'S ADDRESS:</u>**
DANIEL HUFF
65 Arboro Drive
Sharon, Massachusetts 02067

DANIEL HUFF
1121 University Boulevard West
Apt. 515
Silver Spring, Maryland 20902

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

----------------------------------------------------------------x

LER MANAGEMENT LLC

               Plaintiff,

                      AS

      - against -

DANIEL HUFF

               Defendant.

----------------------------------------------------------------x

INDEX NO. _____

**VERIFIED COMPLAINT**

Plaintiff by its attorneys, ROSEN LAW LLC for its complaint in this action, alleges as follows:

1.     This is an action for (i) fraud and fraudulent inducement (including fraud inducing Plaintiff's forbearance and delay of enforcement), (ii) aiding and abetting fraud, (iii) aiding and abetting breach of fiduciary duty, (iv) unjust enrichment, (v) tortious interference with contract, and (vi) equitable relief (including an accounting and constructive trust/equitable lien), arising from Defendant's knowing participation in and substantial assistance to a scheme to strip, divert, and conceal assets and business operations from 21st Century AEYE LLC ("21st Century") and its division formerly known as Financial Technology Solutions International, Inc. ("Original FTSI") pledged as collateral to Plaintiff.

2.     Plaintiff is a secured lender. In September 2024, Plaintiff loaned 21st Century a total of $1,500,000 pursuant to two written promissory notes dated September 10, 2024 ($1,000,000) and September 16, 2024 ($500,000) (together, the "LER Notes").

3.     The LER Notes are secured by written security agreements granting Plaintiff a perfected Article 9 security interest in substantially all assets of 21st Century, including the assets acquired from Original FTSI, and in all identifiable proceeds thereof (the "Collateral").

Case 1:26-cv-01031    Document 1-1    Filed 02/06/26    Page 4 of 35

4.     The LER Notes matured in September 2025, and principal and interest are due and unpaid.

5.     Rather than repay the LER Notes and honor Plaintiff's secured rights, non-party Brannon Castleberry ("Castleberry"), together with insiders including Lisa Huertas ("Huertas") and John De La Peña ("De La Peña"), embarked on a plan to divert, conceal, and transfer Collateral and the going-concern value of the Original FTSI business to newly created entities and accounts they controlled, including entities using confusingly similar names (including "FTSI Corp.").

6.     Following the acquisition, 21st Century owned and operated the former Original FTSI business—an enterprise with approximately 170 employees and over $40 million in annual revenue—out of, among other locations, Monrovia, California. Dr. Said El-Bilani was and remains the 99% owner and manager of 21st Century; the remaining 1% is owned by the Susan B. Napier Living Trust.

7.     As alleged in detail below, Defendant, a New York-admitted attorney, not practicing law and residing outside New York, knowingly joined and substantially assisted this scheme by, among other things: (a) traveling to Palm Beach County, Florida on July 10, 2025 to meet with Plaintiff on Castleberry's behalf and making materially false and misleading statements (and half-truths) about 21st Century's finances and ability to repay Plaintiff's loans; and (b) agreeing to, and standing ready to, receive an unauthorized $130,000 transfer of funds from 21st Century's bank account on or about August 6, 2025, which Castleberry attempted to initiate despite lacking authority over the account.

8.     Defendant communicated with Plaintiff's principal via text message and/or telephone from Defendant's cell phone number 646-496-7074. Upon information and belief,

these communications occurred while Defendant was in the State of New York on August 6, 2025, September 4, 2025, and September 8, 2025. In these communications, Defendant was communicating and negotiating with Plaintiff and other lenders to dissuade Plaintiff and other lenders from commencing legal actions against 21st Century and Castleberry prior to the transfer of Plaintiff's secured assets and collateral to FTSI Corp.

9.      From on or about July 10, 2025 through September 8, 2025, Defendant initiated and maintained a course of communications into New York, including telephone calls and text messages with Plaintiff's counsel in New York (Rosen Law LLC, Great Neck, New York). In these communications, Defendant **(i)** negotiated loan maturity and enforcement issues, **(ii)** represented that 21st Century had sufficient liquidity and that repayment could be made upon demand, and **(iii)** concealed and/or omitted material facts concerning diversion of collateral and misuse of loan proceeds. These New York-directed communications were integral to and form a substantial relationship with Plaintiff's claims for fraud/fraudulent inducement and tortious interference, and Plaintiff's claims therefore arise from Defendant's transaction of business within New York.

10.     Specifically, from July 10, 2025 through at least September 8, 2025, Defendant (i) initiated and conducted repeated communications with Plaintiff's counsel while counsel was located in New York, (ii) negotiated the terms of potential extensions/forbearance and enforcement standstills affecting rights enforceable in New York courts, and (iii) made and/or repeated material misrepresentations and omissions in those New York-directed communications to induce Plaintiff to delay enforcement.

11.     Between on or about July 10, 2025 through September 8, 2025 Defendant initiated and maintained a course of purposeful communications directed into New York,

including telephone calls and text messages to Plaintiff's counsel in New York (Rosen Law LLC, 216 Lakeville Road, Great Neck, New York 11020) and to others, in which he negotiated loan maturity and enforcement issues and made and/or repeated material misrepresentations and omissions designed to delay enforcement while Collateral was being diverted.

12.     Defendant's misrepresentations and omissions were made with the intent that Plaintiff rely on them to delay enforcement, and Plaintiff in fact relied by refraining from, and postponing, enforcement measures that would have been pursued earlier, thereby permitting additional time for the Collateral-stripping scheme to proceed.

13.     Plaintiff's fraud, fraudulent inducement, and tortious interference claims arise from and are substantially related to Defendant's New York transactions because (i) actionable misrepresentations and omissions were made in and through those New York-directed communications, (ii) Plaintiff's reliance occurred through and in consultation with its New York counsel, and (iii) the resulting forbearance window created by those communications provided the opportunity for additional Collateral diversion and for the attempted $130,000 diversion to Defendant.

14.     To the extent applicable and based on further investigation, Plaintiff alleges upon information and belief that Defendant was physically present in New York during one or more of the communications described above, as reflected by location data, travel records, contemporaneous messages, or other evidence.

15.     Defendant's participation and willingness to personally benefit from the diversion of funds pledged as collateral to Plaintiff evidences his knowing assistance to the fraud and breaches of fiduciary duty committed by Castleberry and insiders. Plaintiff brings

this action to hold Defendant accountable and to recover no less than $10,000,000 in damages, plus interest, fees, and equitable relief.

16.     Castleberry represented to Plaintiff that 21st Century had a value of $200 million, and that Plaintiff would be entitled to convert its loans into equity. The equity that was represented by Castleberry would have provided no less than $10,000,000 in equity in 21st Century to Plaintiff, but for the actions and interference by Defendant.

17.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including unpaid principal and interest on the LER Notes, impairment and diminution of Collateral and identifiable proceeds, devaluation of equity options, investigation and enforcement costs, and related consequential damages, in an amount to be determined at trial but not less than $10,000,000.

## II. THE PARTIES

18.     Plaintiff LER Management LLC is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

19.     Plaintiff is a secured creditor of 21st Century by virtue of written promissory notes, security agreements, and perfected UCC-1 filings.

20.     Upon information and belief, Defendant Daniel Huff is a natural person residing in or around Sharon, Massachusetts and/or Silver Spring, Maryland. Defendant is admitted to practice law in the State of New York under registration number 4453908 and, pursuant to New York Judiciary Law § 470, and uses a New York address in his New York attorney registration and/or professional dealings, including in the communications at issue here.

21.     New York Judiciary Law § 470 requires that nonresident attorneys admitted to practice law in New York maintain a physical office within the state to engage in the practice

of law. This statutory requirement applies specifically to attorneys who reside outside New York but are admitted to its bar. The statute allows such attorneys to practice law in New York provided they maintain an office for the transaction of legal business within the state. New York Judiciary Law § 470, *Schoenefeld v State of New York*, 25 N.Y.3d 22 (2015).

22.     The New York Court of Appeals has clarified that Judiciary Law § 470 requires a physical office in New York, not merely a virtual presence or address for service. See *Schoenefeld v. State of New York*, 25 N.Y.3d 22 (2015). The purpose of this requirement is to ensure that attorneys practicing in New York are accessible to clients, adversaries, and other interested parties within the state. *Sina v United Frontier Mut. Ins. Co.*, 2019 N.Y. Misc. LEXIS 1687 (Supreme Ct. Kings Co., 2019). As an attorney admitted to practice law in the State of New York, Defendant is required to have a physical office in New York State.

23.     Upon information and belief, Defendant was not a signatory to the LER Notes or the security agreements. Nevertheless, Defendant held himself out to Plaintiff and Plaintiff's New York counsel as an authorized representative and associate of Castleberry and/or 21st Century and used that apparent authority to negotiate and communicate regarding loan maturity, repayment, and enforcement.

24.     Defendant is an authorized representative of Castleberry and/or 21st Century and used that status and apparent authority to influence Plaintiff's enforcement decisions.

25.     Upon information and belief, Defendant is a registered lobbyist associated with Old Colony Capital, LLC, lobbying United States Senators for Stonington Global on behalf of Maxsip Tel LLC and others.

26.     At all relevant times, Defendant acted for his own pecuniary interest and/or for the benefit of Castleberry and affiliated entities, including by seeking to receive funds traceable

Case 1:26-cv-01031   Document 1-1   Filed 02/06/26   Page 9 of 35

to Collateral and/or by using wrongful means to delay enforcement while Collateral was diverted.

27.     Upon information and belief, Defendant was not formally retained or engaged as counsel for 21st Century, Castleberry, Huertas, De La Peña, or Original FTSI. Nevertheless, Defendant held himself out to Plaintiff as a New York-admitted attorney and as an authorized representative and associate of Castleberry and 21st Century, and used that status and apparent authority to influence Plaintiff's decisions concerning enforcement of its rights.

28.     At all relevant times, Defendant acted as a broker and/or representative for Castleberry and 21st Century in connection with matters relating to the loans made by Plaintiff, including communications and negotiations regarding potential extensions of the loan maturities.

### III. JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to Article VI of the New York Constitution and the Judiciary Law.

30.     The amount in controversy exceeds the jurisdictional limits of all lower courts, as Plaintiff seeks damages of at least Ten Million Dollars ($10,000,000), exclusive of interest and costs.

31.     This Court has personal jurisdiction over Defendant pursuant to CPLR 302(a)(1) because, among other things, Defendant transacted business within New York and purposefully availed himself of the privilege of conducting activities in New York in connection with the subject matter of this action, and Plaintiff's claims arise from those New York transactions, including by using and holding himself out through a New York office and New York-based communications to communicate, negotiate, and commit tortious acts

relating to Plaintiff's loans and collateral, and Plaintiff's claims arise from and are substantially related to those New York transactions.

32.     Upon information and belief, Defendant regularly transacts business within New York, including the practice of law, lobbying, and/or other professional services, and maintains a business office in New York County.

33.     Plaintiff's claims arise out of and relate to Defendant's conduct in furtherance of the scheme alleged herein, including his New York-based communications, negotiations, and assistance directed toward delaying enforcement and facilitating the diversion and attempted diversion of collateral proceeds.

34.     Defendant communicated with Plaintiff's counsel, Rosen Law LLC, while Plaintiff's counsel was in his New York office located at 216 Lakeville Road, Great Neck, New York.

35.     Additionally, this Court has personal jurisdiction over Defendant under CPLR 302(a)(1) because he transacted business within the state and this action arises from those transactions, including communications and negotiations made and directed from within New York (including from Defendant's New York County office) to Plaintiff in Florida and to Plaintiff's counsel in New York, and to others concerning Plaintiff's loans, collateral, and enforcement rights.

36.     Plaintiff's funds were maintained in Flagstar Bank, a bank which is located in New York State and from which Plaintiff funded 21st Century to acquire the assets from Original FTSI, and which funds were stolen by Castleberry and others, through the actions of Defendant.

37.     On or about August 6, 2025, Defendant and Castleberry, using 21st Century's QuickBooks/Intuit access linked to its JPMorgan Chase bank account, with offices located at 270 Park Avenue, New York, New York, attempted to initiate an unauthorized transfer of approximately $130,000 from 21st Century's account to Defendant.

38.     On or about August 6, 2025, Castleberry attempted to initiate an unauthorized transfer of approximately $130,000 from 21st Century's JPMorgan Chase bank account, with offices located at 270 Park Avenue, County, City and State of New York through QuickBooks/Intuit to Defendant as the intended payee/vendor. The transfer was prevented only because 21st Century's lawful manager, Dr. Said El-Bilani, received an automated alert and intervened.

39.     Defendant's wrongful conduct was purposefully directed at impairing Plaintiff's secured rights and collateral position, and included the attempted diversion of $130,000 of funds traceable to Plaintiff's loan proceeds and/or their identifiable proceeds from 21st Century's JPMorgan Chase bank account to Defendant through QuickBooks/Intuit on or about August 6, 2025.

40.     Venue is proper in New York County pursuant to CPLR 503(a) because none of the parties resides in the State of New York and Plaintiff therefore may designate any county as the place of trial, and Plaintiff designates New York County.

## IV. FACTUAL BACKGROUND

41.     21st Century AEYE LLC is a Texas limited liability company formed on or about October 19, 2022. Dr. Said El-Bilani is and at all relevant times was its lawful manager and 99% owner; the remaining 1% is owned by the Susan B. Napier Living Trust.

42.     In or about September 2024, 21st Century acquired the operating assets and business of Original FTSI, a California corporation providing branch and digital transformation solutions to financial institutions, including ATM sales and servicing.

43.     To finance the acquisition, Plaintiff and affiliated lenders extended an aggregate of approximately $3,525,000 in loans to 21st Century between approximately September 10 and September 26, 2024. Plaintiff itself provided $1,500,000 pursuant to the LER Notes, each bearing 10% annual interest and maturing in September 2025.

44.     Plaintiff's loans were memorialized by written promissory notes and secured by security agreements granting Plaintiff broad Article 9 security interests in all assets of 21st Century, including the assets acquired from Original FTSI.

45.     Plaintiff perfected its security interests by filing UCC-1 financing statements in Texas and California covering substantially all assets of 21st Century and the acquired assets from Original FTSI.

46.     Using loan proceeds, 21st Century paid the Susan B. Napier Living Trust approximately $1,500,000 as part of the purchase price. Those funds were paid from 21st Century's JPMorgan Chase bank account, for which Dr. El-Bilani was and remains the sole authorized signatory.

47.     Following the acquisition, 21st Century owned 100% of the assets formerly held by Original FTSI and operated that business as a division sometimes referred to as "21st Century FTSI." 21st Century's assets and operations, including those acquired from Original FTSI, constituted Plaintiff's collateral under the security agreements and UCC-1 filings.

Case 1:26-cv-01031    Document 1-1    Filed 02/06/26    Page 13 of 35

48.     Castleberry was introduced to Dr. El-Bilani in or about 2021 and later became involved in 21st Century's operations. Castleberry never validly acquired a membership interest in 21st Century, but sought to do so in exchange for raising capital.

49.     By mid-2025, Plaintiff became concerned that Castleberry was refusing to provide financial transparency and was misusing 21st Century funds for personal expenses including luxury housing, travel, dining, and a high-end vehicle and/or otherwise diverting assets, including but not limited to FTSI Corp.

50.     On or about May 30, 2025, during a scheduled call regarding repayment of the September 2025 maturities, Castleberry abruptly left the call and refused to provide requested financial information.

51.     Plaintiff requested an in-person meeting to address repayment and collateral protection. That meeting occurred on July 10, 2025 in Palm Beach County, Florida.

52.     On July 10, 2025, Defendant traveled to Palm Beach County, Florida to meet in person with Plaintiff and other lenders on Castleberry's behalf. At that meeting, Defendant made specific, material representations of existing fact and half-truths about 21st Century's liquidity and ability to repay noteholders and requested that Plaintiff extend maturities and forbear from enforcement.

53.     Castleberry did not attend the July 10, 2025 meeting. Instead, he sent Defendant and Huertas to attend. Defendant represented that he was acting as Castleberry's and/or 21st Century's representative and was authorized to negotiate on their behalf.

54.     Attendees at the July 10, 2025 meeting included: (a) for Plaintiff: Gary Rosen, Esq. and (b) for Castleberry/21st Century: Defendant and Huertas.

55.     During the July 10, 2025 meeting, Defendant requested that Plaintiff and other lenders extend maturity and forbear from enforcement. In support of that request, Defendant made the following material representations and half-truths (among others), each of which Plaintiff alleges as a statement of existing fact or a half-truth that was misleading without full disclosure: (a) "we can pay any unhappy noteholder", (b) "cash is available now"; (c) the "business is healthy". (d) the "pipeline is strong"); (e) "repayment can be made upon demand".

56.     Defendant intended Plaintiff to understand, and Plaintiff understood, that Defendant was representing present, existing facts about 21st Century's liquidity and ability to repay noteholders promptly and that there was no material risk of nonpayment if Plaintiff delayed enforcement.

57.     The above statements were materially false and misleading when made because, among other things, at the time Defendant made them: Defendant knew that: (a) 21st Century and Castleberry could not pay any unhappy noteholder, (b) that cash was not available to repay the loans; (c) that the business of 21st Century was not healthy. (d) that there was no pipeline of business for 21st Century; and (e) repayment could not occur upon demand by the noteholders.

58.     Defendant also omitted and concealed material facts necessary to make his statements not misleading, including but not limited to: (a) that Castleberry and insiders had already misused and diverted 21st Century assets for personal expenses; (b) that Castleberry and insiders were forming and/or had formed shell entities with confusingly similar names (including "FTSI Corp.") to receive and operate the Original FTSI business outside 21st Century; (c) that domains, websites, and/or social media accounts were being redirected away

from 21st Century's control; and (d) that Castleberry intended to divert, and later attempted to divert, funds totaling no less than $130,000 from a 21st Century bank account to Defendant.

59.     After the July 10, 2025 meeting and while Plaintiff was evaluating enforcement options, Defendant initiated and/or continued a course of communications into New York directed to Plaintiff's counsel (Rosen Law LLC) and/or to Plaintiff through counsel, including on or about August 6, 2025, September 4, 2025, and September 8, 2025.

60.     From July 10, 2025 through at least September 8, 2025, Defendant initiated and maintained a course of purposeful communications directed into New York, including telephone calls and text messages to Plaintiff's counsel in New York (Rosen Law LLC, 216 Lakeville Road, Great Neck, New York 11020) and to others, in which he negotiated loan maturity and enforcement issues and made and/or repeated material misrepresentations and omissions designed to delay enforcement while Collateral was being diverted.

61.     On July 16, 2025, Huertas sent an email message to Plaintiff's associate and other lender to 21st Century, Jeffrey Dorman ("Dorman") stating: "Thank you, Jeff, for the text letting me know that your conversation with Gary at least moved the discussion forward to the ask of putting together a review of the term extension addendum for negotiation. Dan will represent the company working out terms to a place for consideration. Dan is aware of the ask to include an economic incentive in the addendum and we will work quickly to put that together. I've copied Dan on this email, and should he need to reach out to Gary, I have his contact information below. I am hopeful for positive momentum. Sincerely, Lisa.

62.     On July 16, 2025, Defendant sent an email to Plaintiff's associate and other lender to 21st Century, Jeffrey Dorman ("Dorman"), stating "I echo Lisa's thanks. I'll be in touch with Gary shortly. In advance of that, you'd mentioned you had some ideas on incentives

and I'd love to hear what you think might make sense to take back to them. Happy to do over email or a call."

63.     On July 22, 2025, Defendant sent an email to Dorman stating "Jeff, Attached is a draft note extension. It would be contingent upon successful completion of the following two items: (1) A meeting with you, Gary, and BC, (2) A separate agreement granting you and Gary each 1% equity to be on the advisory board with a 6 month cliff and 2 year vest. The agreement would additionally provide for (a) a face-to-face meeting with BC every 60 days; and (b) both advisors providing services and using their network to advance the business (e.g., govt. contracts, fundraising, legal etc.). Let's talk once you have reviewed and spoken with Gary. Dan". A copy of the Amendment to Promissory Note and Security Agreement attached to the aforesaid email is annexed hereto as **Exhibit "1".**

64.     On August 6, 2025 at approximately 11:11 a.m., Defendant communicated with Plaintiff's counsel and principal, Gary Rosen, by text from phone number 646-496-7074 and stated "copy", in response to Plaintiff's counsel and principal's text message: "I'm on some calls but will phone as soon as I can. Hey still on this unrelated call sorry. For my day job". Then in response to Plaintiff's principal's text message stating "I told Jeff that he would not get a call from Brannon. And that on Wednesday, he would get a notificiation from you that Brannon's not available. You said you have the money to repay everybody so we're calling in the Loan for all of the people who gave money. Let me know what you need if anything from us, and when the funds will be available to be paid".

65.     On August 6, 2025 at approximately 10:47 p.m., Defendant sent a text message to Plaintiff's counsel and principal stating "Just landed. Copy. I'll relay the message. Let's set something up".

66.     On September 4, 2025 at approximately 10:14 p.m., Defendant sent a text message to Plaintiff's counsel and principal stating "Gary, I spoke to Brannon, He said to tell you 'a lawyer will call you Monday afternoon'. Hope you guys find a way through this".

67.     On September 8, 2025 at approximately 6:34 p.m., Defendant sent a text message to Plaintiff's counsel and principal stating "Hi Gary, Update. Just learned the lawyer, David, is still in a deposition, but he is committed to calling you no later than tomorrow".

68.     On September 8, 2025 at approximately 7:52 p.m., Defendant sent a text message to Plaintiff's counsel and principal stating "Would 2-4 ET work tomorrow? If so, they will send a zoom link".

69.     In each of these New York-directed communications, Defendant negotiated loan maturity and enforcement issues and made representations and omissions intended to influence Plaintiff's decisions regarding acceleration, litigation, provisional remedies, and/or the imposition of controls over Collateral and proceeds. Defendant understood and intended that his communications would be received and acted upon by Plaintiff's New York counsel in New York.

70.     In reliance on Defendant's July 10, 2025 representations and his subsequent New York-directed communications, Plaintiff refrained from and/or postponed enforcement actions it otherwise would have taken earlier, including but not limited to: (a) issuing notices of default and/or acceleration; (b) seeking a temporary restraining order, preliminary injunction, attachment, or appointment of a receiver; (c) sending notices to depository institutions and/or QuickBooks/Intuit to impose account controls; (d) commencing litigation earlier than it did; and (e) taking other steps to preserve Collateral and identifiable proceeds.

71.    After July 10, 2025 and continuing through at least September 2025, Castleberry and insiders formed and/or used entities styled "FTSI Corp." and related entities to divert operations, customer relationships, domains, and goodwill away from 21st Century, including redirection of the domain ftsius.com to ftsicorp.com on or about July 11, 2025.

72.    Plaintiff's forbearance and delayed enforcement were foreseeable and intended consequences of Defendant's misrepresentations and omissions and created additional time and opportunity for Castleberry and insiders to divert Collateral and attempt to divert funds to Defendant.

73.    Defendant failed to disclose—and thereby rendered his statements and assurances materially misleading—that, at or around the same time: (a) Castleberry and insiders had already misused 21st Century funds for personal expenses, including paying approximately $12,000 per month for a personal rental house for Castleberry, purchasing a Porsche vehicle, and paying for dental veneers, using monies provided by Plaintiff and other lenders; (b) they were forming or had formed shell corporations with confusingly similar names (including entities styled "FTSI Corp.") in multiple states; (c) they were redirecting domains, websites, and social media accounts away from 21st Century's control; and (d) they were planning to divert, and later attempted to divert, funds totaling approximately $130,000 from 21st Century's bank accounts to Defendant himself. Having chosen to speak and negotiate regarding repayment and collateral protection, Defendant had a duty to disclose these material facts so as not to create a misleading impression.

74.    Plaintiff reaffirmed that it expected repayment in September 2025 as Defendant did not provide documents to extend the term of the repayment of the loans. Nevertheless, Defendant's assurances were designed to, and did, lull Plaintiff into a false sense of security

and delay or temper Plaintiff's efforts to take immediate steps to protect and enforce its rights under the promissory notes and security agreements, including pursuing provisional and other enforcement remedies and taking steps to preserve and secure collateral.

75.    Based on Defendant's representations and assurances to Plaintiff, Plaintiff:

a.    refrained from issuing formal default notices / acceleration (if permitted);

b.    refrained from seeking TRO/attachment/receiver;

c.    refrained from UCC foreclosure steps;

d.    refrained from notifying bank/QuickBooks or imposing account controls; and

e.    refrained from filing suit immediately

which created the time for Defendant and non-parties including Brannon Castleberry for the collateral stripping and diversion and attempted diversion of assets which were secured by security interests in favor of Plaintiff.

76.    After the July 10, 2025 meeting, while Plaintiff was evaluating its enforcement options and based in part on Defendant's misleading assurances, Castleberry and his confederates formed additional entities in Nevada and Texas using the "FTSI Corp." name, redirected 21st Century's website (ftsius.com) to a new domain (ftsicorp.com) controlled by Castleberry, and took other steps to move operations and goodwill out of 21st Century and into those shell entities.

77.    On or about August 6, 2025, Defendant and Castleberry, using 21st Century's QuickBooks/Intuit access linked to its JPMorgan Chase bank account, attempted to initiate an

unauthorized transfer of approximately $130,000 from 21st Century's account to Defendant. Castleberry was not, and never had been, an authorized signatory on that account.

78.    On or about August 6, 2025, Castleberry (who was not an authorized signatory) attempted to initiate an unauthorized transfer of approximately $130,000 from 21st Century's JPMorgan Chase bank account through QuickBooks/Intuit to Defendant. The payee/vendor record used for the attempted transfer reflected Defendant as the recipient.

79.    The attempted transfer triggered an automated email and/or text alert to Dr. Said El-Bilani, who intervened and prevented completion of the transfer.

80.    The attempted $130,000 transfer triggered an email alert from QuickBooks/Intuit to Dr. Said El-Bilani, who intervened and prevented the transfer from being completed. The vendor associated with the attempted transfer was labeled with a notation referencing Castleberry ("BC"), evidencing that Castleberry initiated the attempted payment to Defendant.

81.    Defendant had no legitimate basis to demand or receive $130,000 from 21st Century's account, especially given that 21st Century's obligations to Plaintiff and other lenders were coming due and that such funds were part of, or traceable to Plaintiff's, LER's collateral and/or proceeds of that collateral.

82.    Defendant provided and/or confirmed identifying and banking information necessary for Castleberry to set him up as a QuickBooks/Intuit vendor/payee and to route the attempted $130,000 transfer to Defendant by Defendant providing his bank account number ending in 2332, and bank routing number for Column NA Mercury. Defendant demanded or expected to receive the $130,000 funds never authorized by 21st Century or by Dr. Said El-Bilani.

83.     Upon information and belief, Defendant knew that the proposed $130,000 payment from 21st Century's bank account was unauthorized and would constitute a diversion of funds pledged as collateral to LER. Upon further information and belief, Defendant provided and/or confirmed identifying and banking information necessary to be set up as a payee/vendor in QuickBooks/Intuit to receive the attempted transfer.

84.     Defendant demanded that $130,000 be sent to Defendant from 21st Century funds in its bank account; Defendant coordinated the payment's logistics; Defendant was told of the financial distress and diversion of 21st Century assets including its money in bank account at JPMorgan Chase Bank; and Defendant provided his bank wiring instructions, routing number and account number to Castleberry to facilitate the diversion of 21st Century's funds to Defendant's bank account.

85.     Defendant's willingness to accept such a substantial payment under these circumstances, coupled with his prior participation in the July 10, 2025 meeting and his failure to disclose the ongoing asset-diversion scheme, demonstrates that he knowingly participated in and substantially assisted the fraud and related misconduct committed by Castleberry and insiders.

86.     As a direct and proximate result of the misconduct alleged herein, Plaintiff has suffered substantial damages, including but not limited to: (a) the loss of repayment of principal and interest due under Plaintiff's promissory notes (including principal of $1,500,000, plus contractual interest), which remain due and unpaid; (b) impairment of Plaintiff's secured collateral position and diminution in the value of collateral and identifiable proceeds; and (c) the costs of investigating and addressing the fraudulent scheme.

Case 1:26-cv-01031    Document 1-1    Filed 02/06/26    Page 22 of 35

87. As a direct and proximate result of the scheme perpetrated by Defendant, the value of Plaintiff's Collateral and identifiable proceeds was impaired and diminished, and Plaintiff has been unable to collect the amounts due under the LER Notes at maturity.

88. As a result of Defendant's conduct, Plaintiff has suffered damages including but not limited to (a) unpaid principal of $1,500,000 plus contractual interest, (b) impairment/diminution of Collateral and proceeds, (c) costs of investigation and enforcement, and (d) consequential damages, in an amount to be determined at trial but anticipated to be no less than $10,000,000.

## AS AND FOR A FIRST CAUSE OF ACTION FOR
## FRAUD AND FRAUDULENT INDUCEMENT
## (FORBEARANCE / DELAY OF ENFORCEMENT)

89. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "88" of this complaint, with the same force and effect as if more fully set forth at length herein.

90. In connection with the loans and their repayment, and particularly at the July 10, 2025 in-person meeting in Palm Beach County, Florida, Defendant—acting as Castleberry's and 21st Century's representative with apparent authority—made material misrepresentations of existing fact and half-truths, and omitted material facts necessary to make his statements not misleading, including but not limited to: (a) representing that liquidity was available and that any "unhappy" noteholder could be paid back; (b) representing that the business was healthy, the revenue pipeline was strong, and funds would be available to repay lenders in full; (c) requesting that Plaintiff and other lenders extend maturities and forbear from enforcement; and (d) failing to disclose the insiders' misuse of loan proceeds for personal expenses, the formation of shell entities and diversion of operations and goodwill, the

redirection of domains and systems away from 21st Century's control, and the plan to divert funds—including to Defendant himself.

91.     Defendant made material misrepresentations of existing fact and half-truths, and omitted material facts necessary to make his statements not misleading, including but not limited to the statements and omissions described in the July 10, 2025 meeting paragraphs above and the New York-directed communications paragraphs above (the "Misrepresentations and Omissions").

92.     These statements and omissions were material, were false and misleading when made, and Defendant knew them to be false or misleading (or was reckless in not knowing) at the time he made them, including because he had knowledge of the asset-diversion scheme and stood to personally benefit from it.

93.     Defendant made such statements and omissions with the intent that Plaintiff rely on them, to lull Plaintiff into a false sense of security and to delay or soften Plaintiff's enforcement of its rights under the promissory notes and security agreements.

94.     The circumstances constituting the Misrepresentations and Omissions are pleaded with particularity, including the dates, locations, participants, the substance of statements, and the mediums of communication, and will be further supported by documentary exhibits.

95.     Plaintiff reasonably and justifiably relied on Defendant's statements and omissions, including by delaying and tempering its enforcement and protective actions, such as pursuing provisional remedies, issuing enforcement notices, taking steps to preserve collateral and proceeds, and commencing litigation, when it otherwise would have done so earlier.

96.     The Misrepresentations and Omissions were material. Defendant knew (or was reckless in not knowing) that they were false and misleading when made by Defendant, including the statements from Defendant that (a) "we can pay any unhappy noteholder", (b) "cash is available now"; (c) the "business is healthy". (d) the "pipeline is strong"); and (e) "repayment can be made upon demand".

97.     Defendant made the Misrepresentations and Omissions with the intent to induce Plaintiff to rely on them by delaying acceleration, litigation, provisional remedies, and other enforcement actions, thereby providing time for Collateral to be diverted and for an attempted diversion of funds to Defendant to occur.

98.     Plaintiff justifiably relied on Defendant's Misrepresentations and Omissions by refraining from and postponing enforcement actions as set forth above.

99.     As a direct and proximate result of Defendant's fraud and fraudulent inducement, Plaintiff has been damaged in an amount to be determined at trial, including unpaid principal and interest, impairment and diminution of Collateral and proceeds, and consequential damages, but in no event less than Ten Million Dollars ($10,000,000), including but not limited to unpaid principal and interest, impairment of collateral and proceeds, and consequential damages.

100.    Defendant's conduct was willful, wanton, and malicious, thereby entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendant and deter similar misconduct in the future.

101.    Defendant's conduct was willful, wanton, and malicious and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter similar misconduct.

102.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR AIDING AND ABETTING FRAUD

103.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "102" of this complaint, with the same force and effect as if more fully set forth at length herein.

104.    Castleberry and insiders, including Huertas and De La Peña, committed underlying fraud by misrepresenting 21st Century's finances, revenue pipeline, and intended use of loan proceeds and by diverting assets and operations pledged as collateral to Plaintiff.

105.    Castleberry and insiders committed underlying fraud by, among other things, misrepresenting 21st Century's financial condition and intentions, diverting Collateral and proceeds, and concealing those actions from Plaintiff while seeking to delay enforcement.

106.    Defendant had actual knowledge of the underlying fraud, as evidenced by (i) his role as Castleberry's emissary at the July 10, 2025 meeting, (ii) his repeated communications with Plaintiff, Plaintiff's counsel and Dorman, designed to delay enforcement, and (iii) his participation as the intended beneficiary of the attempted $130,000 diversion from 21st Century's bank account to himself.

107.     Defendant provided substantial assistance to the fraud by, among other things: (a) lending his credibility and apparent authority as a New York-admitted attorney and representative; (b) making and repeating misrepresentations and half-truths and concealing material facts; (c) negotiating and pressing for forbearance and delay; and (d) providing or confirming the information necessary for the attempted diversion of $130,000 in funds to himself.

108.     Defendant's substantial assistance was a direct and proximate cause of Plaintiff's damages because it enabled the fraudulent scheme to continue and expand, impaired Plaintiff's secured position, and caused Plaintiff to delay and temper its enforcement actions.

109.     Defendant's substantial assistance to aiding and abetting fraud included stalling enforcement, helping divert proceeds, creating a false sense of solvency to Plaintiff.

110.     Defendant's substantial assistance was a direct and proximate cause of Plaintiff's damages, including continuation and expansion of the diversion scheme during the forbearance window and the resulting impairment of Collateral and failure of repayment.

111.     By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

_____

## AS AND FOR A THIRD CAUSE OF ACTION FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

112.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "111" of this complaint, with the same force and effect as if more fully set forth at length herein.

113.    Castleberry, Huertas, and De La Peña owed fiduciary duties of loyalty, care, and good faith to 21st Century and its members as officers, employees, and controlling agents of the company, including duties to preserve corporate assets, not to waste or divert corporate property, and not to usurp corporate opportunities.

114.    Upon information and belief, at the time of the misconduct alleged herein, 21st Century was insolvent or in the vicinity of insolvency, and the fiduciary duties of its controlling agents were required to be exercised in a manner that did not improperly prejudice creditors, including Plaintiff, whose perfected security interests attached to Collateral and identifiable proceeds.

115.    Castleberry, Huertas, and De La Peña breached their fiduciary duties by diverting corporate assets and operations to shell entities, misusing company funds for personal benefit, filing false or misleading public records, and restricting the lawful manager's access to corporate accounts and systems.

116.    Defendant had actual knowledge of these breaches and substantially assisted them, including by negotiating forbearance to delay enforcement and by facilitating and/or attempting to receive diverted corporate funds.

117.    Defendant had actual knowledge of these breaches as evidenced by his central role in communications with Plaintiff and Dorman and his participation in the attempted diversion of funds to himself.

118.     Defendant substantially assisted the breaches of fiduciary duty by acting as a representative and spokesperson for Castleberry and insiders, endorsing their misrepresentations and omissions, facilitating the diversion of assets and operations, and agreeing to receive diverted funds.

119.     As a direct and proximate result of Defendant's aiding and abetting, Plaintiff suffered damages including impairment of Collateral and proceeds and inability to collect amounts due at maturity.

120.     As a direct and proximate result of Defendant's aiding and abetting these breaches of fiduciary duty, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

121.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" of this complaint, with the same force and effect as if more fully set forth at length herein.

122.     Upon information and belief, Defendant received and/or retained money, fees, or other economic benefits from Castleberry, 21st Century, and/or related entities that were funded by Plaintiff's loan proceeds or were identifiable proceeds of Plaintiff's Collateral.

123.    At a minimum, Defendant sought to obtain such benefits and acted as the intended recipient of an attempted $130,000 transfer from 21st Century's account on or about August 6, 2025.

124.    To the extent Defendant received, retained, or sought to obtain payments, fees, or other economic benefits from Castleberry, 21st Century, or related entities that were funded by Plaintiff's loan proceeds or traceable to Plaintiff's collateral and proceeds, Defendant has been unjustly enriched at Plaintiff's expense.

125.    Equity and good conscience require that Defendant disgorge all such funds and benefits, and that Plaintiff recovers those amounts as money had and received for Plaintiff's use.

126.    Plaintiff seeks restitution and disgorgement of all amounts Defendant received or was intended to receive that are traceable to Plaintiff's loans and collateral.

127.    It would be against equity and good conscience to permit Defendant to retain any such funds or benefits, and Plaintiff is entitled to restitution and disgorgement of all amounts Defendant received that are traceable to Plaintiff's Collateral and proceeds.

128.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT

129.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "128" of this complaint, with the same force and effect as if more fully set forth at length herein.

130.    Plaintiff had valid and enforceable promissory notes and security agreements with 21st Century. 21st Century breached those agreements, including by failing to repay Plaintiff's loans at maturity in September 2025 and by diverting and dissipating collateral and proceeds in violation of the loan documents.

131.    Plaintiff had valid and enforceable contracts with 21st Century, including the LER Notes and related security agreements (the "Loan Documents").

132.    Defendant had knowledge of the Loan Documents, including through his role as Castleberry's emissary and his negotiations and communications with Plaintiff and Plaintiff's New York counsel concerning maturity, repayment, and enforcement.

133.    Defendant had knowledge of these contracts, including through his role as Castleberry's and 21st Century's representative, his participation in the July 10, 2025 meeting, and related communications.

134.    Defendant intentionally procured and/or induced 21st Century's breach of the Loan Documents by, among other things, using wrongful means (including fraud, misrepresentation, and concealment) to delay enforcement and by facilitating diversion and attempted diversion of Collateral and proceeds, including an attempted $130,000 transfer to himself.

135.    Defendant intentionally and improperly induced and/or procured, or aided and abetted, 21st Century's breach by assisting Castleberry's scheme to divert assets and avoid

repayment, by making misleading statements and omissions to Plaintiff designed to delay enforcement, and by agreeing to accept diverted funds from 21st Century's bank account.

136.   Defendant's interference was without justification and was motivated by personal benefit and the benefit of his client and confederates rather than any legitimate business purpose.

137.   Defendant acted outside any legitimate scope of agency and for his own pecuniary interest, and his interference was not justified.

138.   As a direct and proximate result of Defendant's tortious interference, Plaintiff suffered damages including unpaid principal and interest and impairment/diminution of Collateral and proceeds.

139.   By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

---

## AS AND FOR A SIXTH CAUSE OF ACTION FOR ACCOUNTING AND CONSTRUCTIVE TRUST

140. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "139" of this complaint, with the same force and effect as if more fully set forth at length herein.

141. Plaintiff is entitled to equitable relief because the nature and extent of any payments, transfers, and benefits received by Defendant from Castleberry, 21st Century, and related entities, and the tracing of those funds to Plaintiff's Collateral and identifiable proceeds, are uniquely within Defendant's knowledge and control.

142. Defendant's participation in the scheme alleged herein, his role as an intended recipient of diverted funds, and the fact that the nature and extent of any payments, transfers, and benefits he received are uniquely within his knowledge and control, give rise to special circumstances warranting equitable relief, including an accounting and the imposition of a constructive trust and/or equitable lien over assets traceable to Plaintiff's loan proceeds and collateral.

143. The nature and extent of all payments, transfers, and benefits received or to be received by Defendant from Castleberry, 21st Century, or related entities are uniquely within Defendant's knowledge and control and cannot be determined without an accounting.

144. Equity requires that Defendant be compelled to provide a full and complete accounting of all funds, payments, and economic benefits he received from Castleberry, 21st Century, Original FTSI, or related entities during the relevant period and to identify the source and purpose of each such payment.

145. Plaintiff seeks an accounting directing Defendant to identify all funds, payments, fees, or other benefits received (directly or indirectly) from Castleberry, 21st

Century, and affiliated entities from January 1, 2025 to the present, including the source, date, amount, purpose, and destination of each transfer.

146. To the extent any such funds are traceable to Plaintiff's Collateral and identifiable proceeds, Plaintiff seeks the imposition of a constructive trust and/or equitable lien in Plaintiff's favor over such funds and any property acquired with them, together with appropriate injunctive and turnover relief.

147. By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, including unpaid principal and contractual interest, costs incurred due to fraud (including investigation, enforcement, legal fees), diminution / impairment of collateral and proceeds, any amounts actually diverted, anticipated to be no less than $10,000,000, together with interest thereon accrued and accruing plus attorneys' fees, costs and expenses, to the extent recoverable pursuant to the promissory notes, security agreements, and applicable law.

**WHEREFORE,** Plaintiff demands judgment against Defendant:

a. On the First Cause of Action, awarding compensatory damages in an amount to be determined at trial but not less than $10,000,000, together with punitive damages, interest, costs, and disbursements;

b. On the Second Cause of Action, awarding compensatory damages in an amount to be determined at trial anticipated to be no less than $10,000,000, together with punitive damages, interest, costs, and disbursements;

c. On the Third Cause of Action, awarding compensatory damages in an amount to be determined at trial, anticipated to be no less than $10,000,000, together with punitive damages, interest, costs, and disbursements;

INDEX NO. 166105/2025

Case 1:26-cv-01031    Document 1-1    Filed 02/06/26    Page 34 of 35

RECEIVED NYSCEF: 12/16/2025

     d.     On the Fourth Cause of Action (in the alternative), awarding restitution and disgorgement in an amount to be determined at trial, anticipated to be no less than $10,000,000, together with interest, costs, and disbursements;

     e.     On the Fifth Cause of Action, awarding compensatory damages in an amount to be determined at trial, anticipated to be no less than $10,000,000, together with punitive damages, interest, costs, and disbursements;

     f.     On the Sixth Cause of Action, directing an accounting, imposing a constructive trust and/or equitable lien over traceable funds and property, and granting such other equitable relief as the Court deems just and proper;

     g.     An accounting and disgorgement of funds received by Defendant;

     h.     And for such other and further relief as this Court deems just and proper.

Dated: December 14, 2025
       Great Neck, New York

Gary Rosen, Esq.
Rosen Law LLC
Attorneys for Plaintiff
Rosen Law LLC
216 Lakeville Road,
Great Neck, New York 11020
516-437-3400

## Verification by Attorney

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NASSAU    )

Gary Rosen, Esq. an attorney duly admitted to practice in the Court of the State of New York, affirms that the following statements are true under penalties of perjury:

Deponent is the attorney of record for Plaintiff in the within action. Deponent has read the foregoing Complaint and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that those matters deponent believes it to be true.

This verification is made by deponent and not by the Plaintiff because Plaintiff does not reside in the County wherein your deponent maintains an office.

The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: Statements of said Plaintiff, records supplied by Plaintiff, and deponent's general investigation into the facts of this case.

I affirm this 14th day of December 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Gary Rosen, Esq.
Rosen Law LLC
Attorneys for Plaintiff
Rosen Law LLC
216 Lakeville Road,
Great Neck, New York 11020
516-437-3400